05-5047-cr
United States v. Shamsideen

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: March 6, 2007                    Decided: January 4, 2008)

Docket No. 05-5047-cr

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

RONALD GLOVER, also known as "Born Reality,"
also know as "Nigel Glover,"

*Defendant*,

KASIB SHAMSIDEEN, also known as "Eric Baker," also known as
"David A. Johnson," also known as "Titus Lanchester,"

*Defendant-Appellant*.

Before:
POOLER and RAGGI, *Circuit Judges*, and MCMAHON, *District Judge*.[1]

_____

[1] The Honorable Colleen McMahon, of the United States District Court for the
Southern District of New York, sitting by designation.

-1-

Appeal from a judgment of conviction for unlawful possession of a firearm by a convicted felon, see 18 U.S.C. § 922(g)(1), entered in the United States District Court for the Southern District of New York. Defendant contends that the district court confused the jury as to the government's burden of proof when it defined the jury's deliberative task by reference to finding the "truth."

AFFIRMED.

———————

JONATHAN B. NEW, Assistant United States Attorney (Harry Sandick, Assistant United States Attorney, *on the brief*), *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

DAVID A. LEWIS, Federal Defenders of New York, New York, New York, *for Defendant-Appellant*.

———————

REENA RAGGI, *Circuit Judge*:

Defendant Kasib Shamsideen appeals from a judgment of conviction entered on September 7, 2005, in the United States District Court for the Southern District of New York (Stephen C. Robinson, *Judge*), after a jury trial at which he was found guilty of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Shamsideen contends that the district court impermissibly reduced the government's burden to prove guilt beyond a reasonable doubt by charging the jury that "the crucial, hard-core question" in reviewing the evidence was, "Where do you find the truth," and by stating

further that "[t]he only triumph in any case, whether it be civil or criminal, is whether or not the truth [has] triumphed." Trial Tr. at 370-71. While the challenged language, viewed in isolation, is inadequate to ensure the jury's proper understanding of the government's burden of proof, we conclude that the charge in its entirety fairly and accurately instructed the jury that it could not find defendant guilty unless the government proved each element of the charged crime beyond a reasonable doubt. Accordingly, we affirm the judgment of conviction.

## I. **Background**

### A. The Crime of Conviction

The trial evidence, viewed in the light most favorable to the prosecution, established that, on the evening of August 8, 2003, City of Poughkeepsie police officers stopped a motor vehicle, having received information from multiple sources that the occupants were in possession of firearms. Almost immediately, two men, Kasib Shamsideen and Ronald Glover, exited the vehicle and attempted to flee. In the course of chasing and arresting these men, police officers observed Shamsideen pull a handgun – subsequently identified as a 9-millimeter Beretta – out of his waistband and throw it back toward the vehicle. The gun was, in fact, recovered behind the door of the vehicle as police approached two women passengers who had exited the car. The police also recovered a 9-millimeter Intratec handgun from the floor of the vehicle's rear seat on the side of the car from which Glover had exited.

At trial, Shamsideen and Glover disputed their possession of these firearms.

Nevertheless, they stipulated that the guns in question had traveled in interstate commerce and that they each had previously been convicted of a felony crime.

B.     The Jury Charge

1.     The Trial Objection to the Challenged Instruction

The instruction at issue on this appeal first appeared in a proposed charge previewed by the court for the parties in advance of summation. Its apparent purpose was to explain to the jury that its verdict must be based on the evidence and not on sympathy. The challenged language read:

> Under your oath as jurors you are not to be swayed by sympathy. You are to be guided solely by the evidence in the case and the crucial, hard-core question that you must ask yourselves as you sift through the evidence is, where do you find the truth? The only triumph in any case, whether it be civil or criminal, is whether or not the truth has triumphed. If it has, then justice has been done. If not, justice will not have been done. You are to determine the guilt or innocence of the defendant you are considering solely on the basis of the evidence and subject to the law as I have charged you.

Proposed Charge at 59; see also Trial Tr. at 272.

Through counsel, Shamsideen objected both to this language and to its proposed placement at the end of the jury charge, arguing that it would "confuse a jury about the Government's burden . . . . to prove [guilt] beyond a reasonable doubt." Trial Tr. at 272. He requested that the court instead employ the model sympathy charge endorsed in Modern Federal Jury Instructions, which reads:

> Under your oath as jurors you are not to be swayed by sympathy. You are to be guided solely by the evidence in this case and the crucial, hard-core

-4-

question that you must ask yourself as you sift through the evidence is:  Has the government proven the guilt of the defendant beyond a reasonable doubt?

Leonard B. Sand, et al., 1 Modern Federal Jury Instructions: Criminal, Instruction 2-12 (2003). The district court overruled the objection and indicated its intent to adhere to its proposed charge.

        2.     The Instruction on Burden of Proof

Because Shamsideen submits that the reference to "truth" in the sympathy instruction reduced the government's burden of proof, it is helpful to reproduce the district court's detailed instruction on this burden, the substance of which is not challenged by defendant. The court stated:

> As a result of the defendants' pleas of not guilty, the burden is on the prosecution to prove the guilt of each defendant beyond a reasonable doubt. This burden never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
>
> The law presumes the defendants you are considering to be innocent of all the charges against them.  I, therefore, instruct you that each defendant you are considering is presumed by you to be innocent throughout your deliberations until such time, if ever, you, as a jury, are satisfied that the Government has proven that particular defendant guilty beyond a reasonable doubt.
>
> The defendants begin the trial here with a clean slate.  This presumption of innocence alone is sufficient to acquit a particular defendant unless you, as jurors, are unanimously convinced beyond a reasonable doubt of his guilt after a careful and impartial consideration of all the evidence in this case.
>
> If the Government fails to sustain its burden, you must find the defendants you are considering not guilty.  This presumption was with the defendants when the trial began and remains with each of them even now as I speak to you and

will continue with each defendant into your deliberations, unless and until you are convinced that the Government has proven that particular defendant's guilt beyond a reasonable doubt.

I have said the Government must prove each defendant's guilt beyond a reasonable doubt. The question naturally is: What is a reasonable doubt[?] The words almost define themselves. It is a doubt based upon reason and common sense. It is a doubt that a reasonable person has after carefully weighing all the evidence. It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. A reasonable doubt is not a caprice or a whim, it is not a speculation or a suspicion, it is not an excuse to avoid an unpleasant duty. It is not sympathy.

In a criminal case, the burden is at all times upon the Government to prove beyond — to prove guilt beyond a reasonable doubt. The law does not require that the Government prove guilt beyond all possible doubt. Proof beyond a reasonable doubt is sufficient to convict. This burden never shifts to the defendant, which means it is always the Government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt.

If after fair and impartial consideration of all the evidence, you have a reasonable doubt, it is your duty to acquit the defendant you are considering. On the other hand, if after fair and impartial consideration of all the evidence, you are satisfied of a particular defendant's guilt beyond a reasonable doubt, you should vote to convict.

Trial Tr. at 343-45.

Elsewhere in the charge, the court repeatedly alluded to the government's burden to prove guilt "beyond a reasonable doubt" to support conviction. The court reiterated this standard when charging on the following points: the jury's obligation to base its verdict on the evidence, the use of circumstantial evidence, the role of inferences, the elements of the

-6-

crime, defendant Glover's argument about the lack of incriminating fingerprint evidence, defendants' right not to testify, the use of seized evidence, the function of the jury, the jury's duty to acquit if the government failed to carry its burden, and the jury's duty not to be influenced by considerations of punishment. Indeed, throughout the charge, the district court stated no less than twenty-seven times that it was the government's burden to prove guilt beyond a reasonable doubt.

### 3.    The Supplemental Instruction

After the entire charge, including the language at issue on this appeal, was read to the jury, defendants raised a separate objection to the court's instruction that the jury was "to determine the guilt or innocence of the defendant." Id. at 373-74. They requested that the jury be told that "the question is not guilt or innocence" but, rather, "whether the Government has proven its case beyond a reasonable doubt." Id. at 374. The district court agreed, providing the jury with the following final instruction on the government's burden of proof:

> I may have misspoken earlier to the extent that I said you are to determine the guilt or innocence of the defendant. Your job is to determine whether the Government has proven the guilt of the defendant beyond a reasonable doubt or to determine that the defendant is not guilty. Both of those you must determine based on the evidence in this case and the law as I have given it to you. Either of those you must determine by a unanimous jury.

> So let me just restate this. You are to determine whether the defendant is guilty or not guilty considering solely – considered solely on the basis of the evidence and subject to the law as I have charged you.

Id. at 375-76.

B. Verdict and Sentence

After a day of deliberations, the jury returned a guilty verdict against Shamsideen and a not-guilty verdict against Glover. On August 31, 2005, the district court sentenced Shamsideen to a prison term of thirty-nine months.

## II. Discussion

A. Standard of Review

Shamsideen submits that, by instructing the jurors that their deliberative task was to "find the truth," the district court identified a standard for conviction different from and less demanding than the rule of constitutional sufficiency. That rule, derived from the Due Process Clause, states that no conviction may be obtained "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged." In re Winship, 397 U.S. 358, 364 (1970); see also Jackson v. Virginia, 443 U.S. 307, 318 (1979).

We review legal challenges to a district court's jury charge de novo. See, e.g., United States v. Rommy, 506 F.3d 108, 118 (2d Cir. 2007) (collecting cases). Where an alleged charging error goes to the burden of proof, we will reverse a conviction if there is a "reasonable likelihood" that the jury understood the instructions to permit a guilty verdict based on less than proof beyond a reasonable doubt. Victor v. Nebraska, 511 U.S. 1, 6 (1994); see United States v. Diaz, 176 F.3d 52, 101-02 (2d Cir. 1999); United States v. Doyle, 130 F.3d 523, 535-36 (2d Cir. 1997); see also United States v. Birbal, 62 F.3d 456, 461 (2d Cir. 1995) (noting that "a constitutionally deficient reasonable-doubt instruction can

never be harmless error").

In assessing such a reasonable likelihood, we recognize that "not every unhelpful, unwise, or even erroneous formulation of the concept of reasonable doubt in a jury charge renders the instruction constitutionally deficient." Vargas v. Keane, 86 F.3d 1273, 1277 (2d Cir. 1996). Thus, we do not review challenged language "in isolation"; rather, we consider the charge in its "entirety to determine whether, on the whole, [it] provided the jury with an intelligible and accurate portrayal of the applicable law." United States v. Weintraub, 273 F.3d 139, 151 (2d Cir. 2001); see also Cupp v. Naughten, 414 U.S. 141, 146-47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."). In some circumstances, a specific instruction may be "so far removed" from the standards required by law as to on its own support a conclusion that the jury was likely misled by it. United States v. Dyer, 922 F.2d 105, 107 (2d Cir. 1990).

In Francis v. Franklin, however, the Supreme Court explained why totality review is particularly necessary in assessing claims that discrete charging language reduced the government's burden of proof:

> Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption . . . . The jury, of course, did not hear only the two challenged sentences. The jury charge taken as a whole might

-9-

have explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion.

471 U.S. 307, 315, 318-19 (1985); accord Vargas v. Keane, 86 F.3d at 1277 ("[A]n asserted error in a reasonable doubt instruction may be innocuous or inconsequential when viewed in the context of the charge as a whole; surrounded by different language in a different charge, however, the same language may create a constitutional infirmity."). Undertaking totality review in this case, we conclude that the challenged charge was not constitutionally infirm.

B.   The Challenged "Truth" Instruction, Viewed in the Context of the Entire Charge, Did Not Violate Due Process

1.   Truth and the Reasonable Doubt Standard

At the outset, we observe that "[t]here is no gainsaying that arriving at the truth is a fundamental goal of our legal system." James v. Illinois, 493 U.S. 301, 311 (1990) (internal quotation marks omitted). Indeed, "[t]ruth and justice are [its] ultimate values, . . . and the law and the legal profession will not be worthy of public respect and loyalty if we allow our attention to be diverted from these goals." Stone v. Powell, 428 U.S. 465, 491 n.30 (1976) (internal quotation marks omitted).

The pursuit of truth is not, however, unguided by law. A variety of constitutional and procedural rules define the means by which truth is best ascertained in a free society. See James v. Illinois, 493 U.S. at 311. Foremost among the rules applicable to criminal cases are

-10-

the presumption of innocence and the requirement that the government prove guilt beyond a reasonable doubt, which serve truth by "reducing the risk of convictions resting on factual error." In re Winship, 397 U.S. at 363-64 ("It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned."). Thus, while we do not conclude that a district court necessarily errs simply by referencing "truth" in a jury instruction, we recognize that it may well err if it suggests either that a jury can find the truth of a defendant's guilt based on anything less than proof beyond a reasonable doubt or that anything more than the legal presumption of innocence is necessary to return a not-guilty verdict. See Victor v. Nebraska, 511 U.S. at 22 (observing that "trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires"); see also United States v. Hernandez, 176 F.3d 719, 728 (3d Cir. 1999) (concluding that "due process is satisfied by nothing less than a juror's understanding that he or she may not vote to convict a defendant based upon a belief that the defendant is probably guilty" (emphasis in original) (internal quotation marks omitted)). Shamsideen submits that the challenged instruction raised just such an impermissible suggestion in this case. We are not persuaded.

### 2. The Challenged "Truth" Instruction

#### a. Viewed in Isolation

Focusing first only on the challenged language, we observe that an instruction that identifies "the crucial, hard-core question" for jury deliberation simply as, "Where do you

find the truth," would constitute error because, by itself, that instruction is inadequate to ensure the jury's understanding that (1) the law presumes the truth of a defendant's innocence, and (2) the truth of a defendant's guilt may not be found on less than proof beyond a reasonable doubt. The question fails to make clear that, even if the jury strongly suspects that the government's version of events is true, it cannot vote to convict unless it finds that the government has actually proved each element of the charged crime beyond a reasonable doubt. The question also fails to inform the jury that if the evidence is insufficient to permit it independently to "find the truth," its duty, in light of the presumption of innocence, is to acquit. Further, to the extent the challenged instruction in this case went on to reference the "triumph of truth" as essential to justice "in any case, whether it be civil or criminal," Trial Tr. at 371, such language, without more, fails to alert the jury that a higher standard of proof is demanded in criminal than in civil cases. See United States v. Hughes, 389 F.2d 535, 537 (2d Cir. 1968) (reversing conviction where jury charge erroneously allowed jury to use civil preponderance standard in criminal case).

Mindful that instructions telling juries to "find the truth" require considerable explication to ensure a jury's understanding of the rule of constitutional sufficiency, a number of courts have discouraged their use. See United States v. Wilson, 160 F.3d 732, 747 (D.C. Cir. 1998) (observing potential for inconsistency between instruction telling jury to "determine where the truth lies" and burden of proof beyond a reasonable doubt); United States v. Pine, 609 F.2d 106, 108 (3d Cir. 1979) (noting that instruction telling jury "[y]our

-12-

basic task is to evolve the truth" could "dilute and thereby impair the constitutional requirement of proof beyond a reasonable doubt"); State v. Purnell, 126 N.J. 518, 545, 601 A.2d 175, 187-88 (1992) (warning that instruction suggesting that "concept of reasonable doubt is a simple search for truth may run the risk of detracting from both the seriousness of the decision and the State's burden of proof").[3] We now do likewise, concluding that, to the extent a trial court thinks it appropriate in a criminal case to identify for a jury a single "crucial, hard-core question," that question should be framed by reference not to a general search for truth but to the reasonable doubt standard that the law has long recognized as the best means to achieve the ultimate goals of truth and justice. See generally Modern Federal Jury Instructions: Criminal at Instruction 2-12 (proposing, as part of sympathy instruction, that "the crucial, hard-core question that you must ask yourself as you sift through the evidence is: Has the government proven the guilt of the defendant beyond a reasonable doubt?").

b.      Viewed in Context

Whatever burden-of-proof concerns might be identified by reviewing the challenged "truth" instruction in this case in isolation, we conclude that, when that instruction is placed in the context of the entire charge, there was no reasonable likelihood that the jury would

---

[3] In each of these cases, the court nevertheless concluded that there was no error in the jury charges when reviewed in their entirety. See infra at 15 (discussing cases and reaching same conclusion).

have thought it could return a guilty verdict on anything less than proof beyond a reasonable doubt or that it thought that anything more than the presumption of innocence was necessary to support acquittal. See Victor v. Nebraska, 511 U.S. at 6 ("[T]he proper inquiry is not whether the [reasonable doubt] instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." (emphasis in original)).

The law recognizes that instructions correctly explaining the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, particularly when given repeatedly, can render a charge adequate in its entirety, despite the inclusion of some objectionable language. See, e.g., United States v. Ciak, 102 F.3d 38, 45 (2d Cir. 1996); United States v. Bifield, 702 F.2d 342, 351 (2d Cir. 1983). In all three of the cases cited earlier, wherein courts criticized "truth" instructions because of their potential to confuse a jury's understanding of the rule of constitutional sufficiency, see supra at 13, it was ultimately determined that the repetition of correct instructions as to the government's reasonable-doubt burden was sufficient to ensure due process. See United States v. Wilson, 160 F.3d at 747 (holding "truth" instruction did not constitute plain error where district court "repeatedly and correctly instruct[ed] the jury that the government had the burden of proof beyond a reasonable doubt"); United States v. Pine, 609 F.2d at 109 (affirming conviction despite "truth" instruction "in light of the trial judge's full and forceful charge on the requirement of proof beyond a reasonable doubt"); State v. Purnell, 126 N.J. at 544, 601 A.2d

at 186-87 (rejecting plain error challenge to "truth" instruction because "concept of the State's burden to prove guilt beyond a reasonable doubt permeates the trial court's jury charge" (internal quotation marks omitted)).

In this case, the district court not only clearly and accurately instructed the jury on the reasonable doubt standard in some detail; it referenced that standard at least twenty-seven times throughout its instructions, framing virtually every jury inquiry (except for venue) by noting the government's burden of proof beyond a reasonable doubt.[4]  In these circumstances, we reject defendant's argument that the challenged "truth" instruction likely led the jury to think a guilty verdict could be returned on any lesser standard of proof.  See Victor v. Nebraska, 511 U.S. at 6.

In urging a different conclusion, Shamsideen insists that the total charge was insufficient to cure an erroneous "notion" conveyed by the challenged instruction, i.e., that justice required the jury to determine the "truth" without regard to the presumption of innocence and the reasonable doubt standard of proof.  Appellant's Reply Br. at 2. We are not persuaded.  Although the district court did advise the jury that the "triumph of truth" determined whether "justice" was done in any case, it did so in the context of explaining to the jury that evidence, and not sympathy, must guide its deliberations.  Nowhere did the district court suggest, as Shamsideen argues, that the jury could find the "truth" of a

---

[4] The district court correctly instructed the jury that the government's burden of proof with respect to venue was a preponderance of the evidence.  See United States v. Rommy, 506 F.3d at 119.

-15-

defendant's guilt on less than proof beyond a reasonable doubt, or that, absent such proof, any further jury finding of true innocence was necessary to acquit.

To the contrary, the total charge clearly conveyed to the jury the law's presumption of the "truth" of defendants' innocence. The court emphatically instructed the jury that it was obliged to afford each defendant this presumption of innocence throughout trial and even into jury deliberations "until such time, if ever, [that] you, as a jury, are satisfied that the Government has proven . . . defendant guilty beyond a reasonable doubt." Trial Tr. at 343. Further, the court explained that "the presumption of innocence" was "alone . . . sufficient" to support acquittal, so that "[i]f the Government fails to sustain its burden, you must find the defendant[] you are considering not guilty." Id.

In light of this detailed instruction, Shamsideen does not – and cannot – claim error akin to that identified in United States v. Doyle, wherein we concluded that an instruction telling the jury that the reasonable doubt standard was "designed to protect the innocent and not the guilty," 130 F.3d at 533, effectively rendered the presumption "meaningless," id. at 538. Nor is this case analogous to Francis v. Franklin, upon which Shamsideen relies. In Francis, the jury was presented with two short instructions that were "irreconcilable." 471 U.S. at 322-23 (noting that jury was instructed both that "person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts" and also that "person will not be presumed to act with criminal intention"). Further, the charge failed to indicate which of these instructions was entitled to "more weight." Id. at 322. It was in

these circumstances that the Supreme Court concluded that "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." Id. In this case, however, when the court's brief "truth" instruction is read together with its more detailed and pervasive instructions about the presumption of innocence and the government's burden of proof, there is no contradiction. A jury would reasonably understand from the totality of the charge that it could not find the "truth" of a defendant's guilt unless and until the government proved every element of the charged crime beyond a reasonable doubt. Absent such evidence, the law required the jury to presume the "truth" of defendant's innocence and, as a consequence, to vote to acquit.[5]

No different conclusion is warranted by the fact that the challenged "truth" instruction came at the conclusion of the district court's jury charge. Although Shamsideen points us to United States v. Hughes, a case in which we noted the "considerable" impact of an erroneous instruction given at the conclusion of a jury charge, 389 F.2d at 537 (noting that erroneous instruction was last thing jury heard before deliberations), our decision to reverse in that case was also informed by serious prosecutorial misconduct, specifically, a characterization of the defendant as "doubly vicious because he demanded his full constitutional rights," id. at 536. This case is further distinguishable from Hughes in two other respects. First, because the jurors here were provided with a copy of the full charge to reference during their deliberations there is little reason to conclude from the fact that the

_____

[5] As noted, the jury did vote to acquit defendant Glover.

challenged "truth" instruction was heard toward the end of the court's oral presentation that this single instruction would impair the jury's ability to recall and apply the detailed and reiterated constitutional sufficiency instruction. Second, the challenged "truth" instruction was not, in any event, the district court's last word to the jury before deliberations. At the request of defense counsel, the court provided a supplemental instruction that specifically defined the jury's deliberative task by reference to the due process standard of proof: "Your job is to determine whether the Government has proven the guilt of the defendant beyond a reasonable doubt or to determine that the defendant is not guilty." Id. at 375. This final instruction, by reiterating yet again the constitutional sufficiency standard emphasized throughout the charge, satisfactorily eliminated any confusion as to the government's burden of proof that might have been created by the sympathy instruction's discussion of the triumph of truth.

Accordingly, upon review of the jury charge in its entirety, we conclude that the jury was so clearly and thoroughly instructed as to the presumption of innocence and the government's burden of proof that there was no reasonable likelihood that the challenged "truth" instruction led the jury to think it could return a guilty verdict on anything less than proof beyond a reasonable doubt of each element of the charged crime.

III.    **Conclusion**

To summarize, while the criminal law strives to ascertain truth, trial courts should not define a jury's deliberative task by reference to finding the truth but, rather, by reference to

-18-

whether the government has satisfied its burden to prove the elements of the charged crime beyond a reasonable doubt. Nevertheless, when we review the challenged "truth" instruction in this case in light of the total charge, we identify no reasonable likelihood that the jury thought it could return a guilty verdict on anything less than the required constitutional standard of proof.

AFFIRMED.